IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW B. JOHNSON, *et al.*,

      Plaintiffs,

    vs.                      Civil Action 2:13-cv-756
                                 Magistrate Judge King

JOS. A. BANK CLOTHIERS, INC.,

      Defendant.

<u>OPINION AND ORDER</u>

      Plaintiffs bring this action on behalf of themselves and a putative plaintiff class of Ohio residents, alleging violations of the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 *et seq.*, and rules promulgated thereunder, in connection with defendant's marketing practices based on allegedly false advertised regular prices. This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Defendant Jos A. Bank Clothier, Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint* ("*Defendant's Motion*"), Doc. No. 12, *Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss* ("*Plaintiffs' Response*"), Doc. No. 23, and *Defendant's Reply*, Doc. No. 27.

      Also before the Court is plaintiffs' motion to strike *Defendant's Reply*, Doc. No. 28. Plaintiffs argue that *Defendant's Reply* should be stricken from the record pursuant to S.D. Ohio Civ. R. 7.2 because it exceeds 20 pages. Local Rule 7.2(a)(3) provides as follows:

> **Limitation Upon Length of Memoranda.** Memoranda in support of or in opposition to any motion or application to the Court should not exceed twenty (20) pages. In all cases in which memoranda exceed twenty (20) pages, counsel must include a combined table of contents and a succinct, clear

> and accurate summary, not to exceed five (5) pages,
> indicating the main sections of the memorandum, the
> principal arguments and citations to primary authority made
> in each section, as well as the pages on which each section
> and any sub-sections may be found.

S.D. Ohio Civ. R. 7.2(a)(3). Although Rule 7.2(a)(3) expresses a preference that memoranda not exceed twenty pages, the rule in fact contemplates the filing of memoranda that exceed twenty pages and provides a procedure for doing so. *See id*. ("In all cases in which memoranda exceed twenty (20) pages . . . ."). Prior leave of Court is not expressly required by either Rule 7.2 or the procedures of the undersigned, so long as the requirements of the rule are satisfied. *See id*. *Defendant's Reply* complies with these requirements. Accordingly, plaintiffs' motion to strike, Doc. No. 28, is **DENIED**.

For the following reasons, *Defendant's Motion*, Doc. No. 12, is **GRANTED**.

## I. Background

The *Complaint*, Doc. No. 1, includes the following allegations. Defendant Jos A. Bank Clothiers, Inc., is a Delaware corporation with its principal place of business in Maryland. *Id*. at ¶ 11. Defendant operates a national chain of retail clothing stores and has approximately twenty-five stores throughout Ohio, including four stores in Franklin County, Ohio. *Id*. at ¶ 12. Defendant frequently advertises sales via "television commercials, targeted mailings, Facebook, email, targeted telephone campaigns and in-store advertising" in which the purchaser of one suit at the "regular" price receives a specified number of additional suits for free. *See id*. at ¶¶ 20-21, 40, 46.

2

Plaintiffs Matthew Johnson and Charles Patterson are Ohio residents. In 2013, each purchased a suit from defendant at "the purported 'regular price' of $795" and, based on the advertised sale at the time, received "three 'free' suits." *Id.* at ¶¶ 14-18.

Plaintiffs allege that the "regular price" of each purchased suit "did not reflect the true price regularly paid by consumers for Jos. A. Bank suits." *Id.* at ¶ 17. Plaintiffs allege that the "regular price" of the suits "was grossly inflated by Jos. A. Bank in order to pass the costs of the 'free suits' on to the Plaintiffs." *Id.* at ¶ 18. According to plaintiffs, defendant's suits are "almost never" sold at the "regular price;" plaintiffs believe that less than one percent of defendant's suits sold in Ohio are sold at the "regular price." *Id.* at ¶¶ 22, 25, 27. Plaintiffs allege that, because defendant's suits "are on 'sale' almost 100% of the time," *id.* at ¶ 23; *see also id.* at ¶ 40 ("[A]s soon as one sale ends, another substantially similar sale begins."), defendant's advertised "regular prices" "do not reflect the true price regularly paid by consumers for their suits." *Id.* at ¶ 22.

> That deception proximately injures and damages the consumer who is not getting a 'deal' or a 'sale' price at all, but rather, is paying an inflated 'regular price' for suits not worth nearly that much.

*Id.* at ¶ 30.

The *Complaint* also alleges that defendant has misrepresented the quality of its suits:

> Jos. A. Bank represented to the Plaintiffs and those similarly situated that they would be receiving a suit, sportcoat or dress slacks of a certain quality – that is, a suit, sportcoat or dress slacks of a quality commensurate with its 'regular' price. What the Plaintiffs and those

3

> similarly situated actually received was a suit, sportcoat
> or dress slacks that was greatly inferior in value to what
> was represented by the regular price.

*Id.* at ¶ 31.  When plaintiff Johnson purchased "a suit he believed was

regularly sold for $795, he assumed that suit would be comparable in

quality to suits sold for $795 by other men's specialty retailers."

*Id.* at ¶ 32.  However, defendant "did not employ the quality of

materials, construction or standards of craftsmanship one would expect

of a suit with the retail price they advertised[.]"[1]  *Id.* at ¶ 34.

## II.    **Standard**

A motion to dismiss under Rule 12(b)(6) attacks the legal

sufficiency of the complaint.  *See Roth Steel Prods. v. Sharon Steel

Co.*, 705 F.2d 134, 155 (6th Cir. 1983).  In determining whether

dismissal on this basis is appropriate, a complaint must be construed

in the light most favorable to the plaintiff, and all well-pleaded

facts must be accepted as true.  *See Bower v. Fed. Express Corp.,* 96

F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.,* 896 F.

Supp. 734, 738 (S.D. Ohio 1994).  The United States Supreme Court has

explained that, "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations

in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546

(2007).  However, a plaintiff's claim for relief "requires more than

labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Id.* at 555.  "Factual allegations

must be enough to raise a right to relief above the speculative

---

[1] Plaintiffs' proposed class includes persons who purchased a suit from
defendant, as well as those who purchased "dress pants or sportcoats/suit
jackets."  *Complaint*, ¶ 81.  The Court refers only to suits for simplicity's
sake and because the named plaintiffs allegedly purchases suits.

4

level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

## III. Discussion

Plaintiffs' first cause of action alleges that defendant violated § 1345.02(B)(2) of the OCSPA. The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02(A). Under O.R.C. § 1345.02(B)(2), it is an unfair or deceptive act or practice for a supplier to represent, *inter alia*, "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not."

Plaintiffs allege that defendant violated § 1345.02(B)(2)

> by represent[ing] to the Plaintiffs and those similarly
> situated that they would be receiving a suit, sportcoat or
> dress slacks of a certain quality – that is, a suit,
> sportcoat or dress slacks of a quality commensurate with
> its 'regular' price. What the Plaintiffs and those
> similarly situated actually received was a suit, sportcoat
> or dress slacks that was greatly inferior in value to what
> was represented by the regular price.

*Complaint*, ¶ 31. Plaintiffs argue that defendant's "price signals to consumers a particular level of quality" and that the price of an item is an implicit representation by the supplier that the item is of a particular standard, quality, or grade. *Plaintiffs' Response*, p. 10. Specifically, plaintiffs argue that the price advertised by a supplier implicitly represents that the item being sold is of similar quality to the items sold by the supplier's competitors at the same price. See *id.*; *Complaint*, ¶¶ 32 ("For, example, when Johnson bought a suit he believed was regularly sold for $795, he assumed that suit would be

5

comparable in quality to suits sold for $795 by other men's specialty retailers . . . ."), 34 ("However, in producing Johnson's suit and, in fact, all of their suits, Jos. A. Bank did not employ the quality of materials, construction or standards of craftsmanship one would expect of a suit with the retail price they advertised . . . ."). Plaintiffs' argument is not well taken.

As noted *supra*, it is a deceptive act or practice for a supplier to represent "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." O.R.C. § 1345.02(B)(2). Plaintiffs' reference to implicit representations notwithstanding, a violation of § 1345.02(B)(2) requires a supplier to affirmatively represent that a product is of a "particular standard, quality, grade, style, prescription, or model." *See* R.C. § 1345.02(B)(2); *Patterson v. Cent. Mills, Inc.*, 112 F.Supp. 2d 681, 692 (N.D. Ohio Aug. 21, 2000) ("Although plaintiffs contend that in designing and marketing the shirt at issue [the defendant] represented that the shirt was appropriate and safe to be worn by children, plaintiffs have presented no evidence that [the defendant] made such an affirmative representation.") (citing *Funk v. Montgomery AMC/Jeep/Renault*, 586 N.E.2d 1113 (Ohio Ct. App. 1990) (requiring an affirmative representation of inaccurate or false information to recover under O.R.C. § 1345.02); *Hubbard v. Bob McDorman Chevrolet*, 662 N.E.2d 1102, 1107 (Ohio Ct. App. 1995) (finding no violation of R.C. § 1345.02(B) where there was no evidence that "material misrepresentations were affirmatively made by appellee"); *Lintermoot v. Brown*, No. 15-86-25,

6

1988 WL 80492, at *1 (Ohio Ct. App. Aug. 2, 1988) ("We first observe that the evidence does not disclose that defendant made any affirmative representations to plaintiff as to the type of engine in the vehicle at the time of sale. . . .  Obviously, had the legislature intended R.C. 1345.02 to include failure to disclose as well as representations as deceptive or unfair practices, it could easily have included such language.").  The *Complaint* alleges that defendant's suits are "greatly inferior in value to what was represented by the regular price" of the suits.  *Complaint*, ¶ 31.  The *Complaint* does not, however, allege that defendant made any affirmative representation that its suits were of a *particular* quality.  Plaintiffs may have expected that a suit purchased for $795 from defendant "would be comparable in quality to suits sold for $795 by other men's specialty retailers;" *see id.* at ¶ 32; however, a consumer's subjective expectations of a product's quality do not alone support a cause of action under O.R.C. § 1345.02(B)(2).  Although the price charged in a consumer transaction may be generally representative of the quality of the items sold, the price charged does not, by itself, constitute a representation that a product is of a *particular* quality.  Accordingly, the *Complaint* fails to state a colorable claim for relief under O.R.C. § 1345.02(B)(2).

Plaintiffs' first cause of action also alleges a violation of O.A.C. § 109:4-3-12(A).  *See Complaint*, ¶ 4; *Plaintiffs' Response*, pp. 8 n.29, 14.  That regulation is titled "Declaration of policy" and provides:

> This rule is designed to define with reasonable specificity certain circumstances in which a supplier's acts or

7

> practices in advertising price comparisons are deceptive
> and therefore illegal. For purposes of this rule, price
> comparisons involve a comparison of the present or future
> price of the subject of a consumer transaction to a
> reference price, usually as an incentive for consumers to
> purchase. This rule deals only with out-of-store
> advertisements as defined in paragraph (B)(3) of this rule.
> The rule stems from the general principle, codified in
> division (B) of section 1345.02 of the Revised Code, that
> it is deceptive for any claimed savings, discount, bargain,
> or sale not to be genuine, for the prices which are the
> basis of such comparisons not to be bona fide, genuine
> prices, and for out-of-store advertisements which indicate
> price comparisons to create false expectations in the minds
> of consumers.

O.A.C. § 109:4-3-12(A). The parties have briefed their respective
positions regarding whether defendant's promotions constitute a "price
comparison" under O.A.C. § 109:4-3-12(A). *See Plaintiffs' Response*,
p. 9; *Defendant's Motion*, pp. 17-19. However, the Court finds it
necessary to first consider whether § 109:4-3-12(A) even creates a
private cause of action because the regulation does not expressly
provide for such a right. The parties have not addressed this issue.

"When determining whether, in the absence of explicit language, a
statute grants a private right of action, Ohio courts have used the
test set forth in" *Cort v. Ash*, 422 U.S. 66 (1975); *Grey v. Walgreen
Co.*, 967 N.E.2d 1249, 1252 (Ohio Ct. App. 2011) (citing *Strack v.
Westfield Cos.*, 515 N.E.2d 1005 (Ohio Ct. App. 1986)):

> First, is the plaintiff "one of the class for whose
> especial benefit the statute was enacted," — that is, does
> the statute create a federal right in favor of the
> plaintiff? Second, is there any indication of legislative
> intent, explicit or implicit, either to create such a
> remedy or to deny one? Third, is it consistent with the
> underlying purposes of the legislative scheme to imply such
> a remedy for the plaintiff?

*Cort*, 422 U.S. at 78 (citations omitted). However, courts have tended
to focus most closely on the second *Cort* factor, *i.e.,* that of

legislative intent to create a personal right and a private remedy. *See, e.g., Grey*, 967 N.E.2d at 1252-53 ("The United States Supreme Court has gradually focused on the single factor of whether there was a legislative intent to grant a private right of action") (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)). *See also Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 249 (Ohio 1976) (refusing to "read [] a remedy into" O.R.C. § 4101.17 where there was no "clear implication" that the legislature "intended to create a civil action for damages for the breach of [§] 4101.17").

As noted *supra*, plaintiffs allege that defendant violated O.A.C. § 109:4-3-12(A). *See Complaint*, ¶ 4; *Plaintiffs' Response*, pp. 8 n.29, 14. Pursuant to O.R.C. § 1345.05(B)(2), the Ohio Attorney General is authorized to adopt substantive rules defining acts or practices that are deceptive and violative of the OCSPA. O.R.C. § 1345.05(B)(2). Section 109:4-3-12(A) was adopted by the Ohio Attorney General pursuant to this provision; however, nothing in the regulation suggests an intention to create a personal right or a private remedy. Plaintiff has not referred to, and the Court has not found, any Ohio authority even suggesting that O.A.C. § 109:4-3-12(A) creates a private cause of action. Section 109:4-3-12(A) is titled "Declaration of policy," and it merely sets forth the policy upon which the remainder of the regulation is premised. Unlike sections (C)-(I) of the regulation,[2] § 109:4-3-12(A) does not list or describe any conduct that is considered "deceptive," and thus actionable, under the OCSPA. Furthermore, the basis of plaintiffs' allegations, i.e., defendant's

---

[2] Section (B) provides a list of definitions. *See* O.A.C. § 109:4-3-12(B).

alleged improper comparison of sales prices to its own regular prices, *see Plaintiffs' Response*, p. 9 ("Every time a consumer purchases any sale item at Jos. A. Bank, which includes most items in the store, he is deceived by the 'comparison' to that inflated regular price."), is expressly addressed in section (E) of the regulation, which provides for a private cause of action. *See* O.A.C. § 109:4-3-12(E) (titled "Comparison with supplier's own price" and setting forth actionable "deceptive" acts). Under the circumstances, the Court cannot permit plaintiffs' claims premised on a violation of O.A.C. § 109:4-3-12(A) to proceed; to hold otherwise would circumvent the express language and intent of the regulation. *See e.g.*, *Howard v. Pierce*, 738 F.2d 722, 727 n.9 (6th Cir. 1984) (finding that 42 U.S.C. § 1437, titled "Declaration of policy and public housing agency organization," "expresses the congressional goal of remedying the 'acute shortage of decent, safe, and sanitary dwellings for families of low income'" and does not create a private cause of action).

To the extent that plaintiffs have asserted claims under O.A.C. § 109:4-3-12(E), the *Complaint* fails to state a cause of action. Plaintiffs' allegations relate to advertisements and sales in which one item is purchased at a "regular price" and additional items are "free." *See e.g.*, *Complaint*, ¶¶ 1-2, 5, 16, 20-21, 81 (defining the potential class as "[a]ll persons who purchased a suit, dress pants or sportcoats/suit jackets at a Jos. A. Bank retail store in Ohio, . . . where the purchase was for one item based on a 'regular price' in connection with an offer of at least one other 'free' item."). The *Complaint* does not allege that defendant advertised its items using

10

such terms as "'regularly .........., now ..........,' '.......... per cent off,' 'reduced from .......... to ..........,' 'save $..........,'" *see* O.A.C. § 109:4-3-12(E)(1), that defendant's advertising uses "language indicating a range of savings or reduction," *see* O.A.C. § 109:4-3-12(E)(2), or that defendant sells by means of "individually negotiated transactions." *See* O.A.C. § 109:4-3-12(E)(3). Furthermore, defendant's alleged advertisements, which offer free items when one item is purchased at the regular price, *see id.*, are not considered a "price comparison" for purposes of O.A.C. § 109:4-3-12, because they do not represent "that a savings, reduction or discount exists or will exist," and they do "not reasonably imply a comparison to identifiable prices or items." *See* O.A.C. § 109:4-3-12(B)(4) (defining "price comparison"). Accordingly, the *Complaint* fails to state a claim under O.A.C. § 109:4-3-12(E).

Plaintiffs also allege a violation of O.A.C. § 109:4-3-04, which regulates the use of the word "free" in advertisements by suppliers. Section 109:4-3-04 of the Ohio Administrative Code provides as follows:

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to use the word "free" or other words of similar import or meaning, except in conformity with this rule. It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. In the absence of such a base price a "free" offer is in reality a single price for the combination of goods or services offered, and the fiction that any portion of the offer is "free" is inherently deceptive.

O.A.C. § 109:4-3-04(A). Where, as alleged here, there is

11

a consumer transaction in which goods or services are offered as 'free' upon the purchase of other goods or services the supplier must insure:

(1) That the unit regular price charged for the other goods or services is not increased, or if there is no unit regular price, the unit price charged for the other goods or services is continued for a reasonable period of time[.]

O.A.C. § 109:4-3-04(D)(1).  Furthermore,

[o]nly the supplier's regular price for the goods or services to be purchased may be used as the basis for a "free" offer.  It is, therefore, a deceptive act or practice for a supplier to offer "free" goods or services based on a price which exceeds the supplier's regular price for other goods or services required to be purchased.

O.A.C. § 109:4-3-04(E).  "Regular price" is defined as

the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time.  A price is not a regular price if:

(a) It is not the supplier's actual selling price;

(b) It is a price which has not been used in the recent past; or

(c) It is a price which has been used only for a short period of time.

O.A.C. § 109:4-3-04(F)(1).

In the case presently before the Court, plaintiffs allege that the "regular price" of the suits purchased by them "did not reflect the true price regularly paid by consumers for Jos. A. Bank suits." *Complaint*, at ¶ 17.  Plaintiffs allege that the "regular price" of the suits "was grossly inflated by Jos. A. Bank in order to pass the costs of the 'free suits' on to the Plaintiffs." *Id*. at ¶ 18.  According to plaintiffs, defendant's suits, as well as their formal wear, dress

pants, and sportcoats, are "almost never" sold at the "regular price;" plaintiffs believe that less than one percent of defendant's suits sold in Ohio are sold at the "regular price." *Id*. at ¶¶ 22, 25, 27. Plaintiffs allege that, because defendant's "suits, sportcoats and dress pants are on 'sale' almost 100% of the time," *id*. at ¶ 23; *see also id*. at ¶ 40 ("[A]s soon as one sale ends, another substantially similar sale begins."), defendant's advertised "regular prices" "do not reflect the true price regularly paid by consumers for their suits." *Id*. at ¶ 22. Accordingly, plaintiffs allege that defendant uses an "inflated" regular price, and not its true "regular price," in advertisements offering "free" items with the purchase of an item at the "regular price." *See e.g.*, *id*. at ¶¶ 16-17, 22, 25, 30. The Court concludes that these allegations are sufficient to state a colorable cause of action for an individual under O.A.C. § 109:4-3-04 at this juncture. Nevertheless, plaintiffs' claims must be dismissed because the *Complaint* fails to allege that the alleged OCSPA violations occurred within Ohio and the *Complaint* fails to adequately allege damages for a class action under the OCSPA.

The OCSPA provides, in part: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." O.R.C. § 1345.02(A). A consumer has a cause of action and is entitled to relief for any violation of the OCSPA. *See* O.R.C. § 1345.09. A consumer may, in an individual action, rescind the transaction or recover actual and statutory damages for a

13

violation of the OCSPA.  O.R.C. § 1345.09(A).  Alternatively, the
consumer may "recover damages or other appropriate relief in a class
action under Civil Rule 23."  O.R.C. § 1345.09(B).  In order to
maintain a class action, however, a plaintiff must allege actual
"damages [that] were a proximate result of the defendant's deceptive
act."  *Butler v. Sterline, Inc.*, 210 F.3d 371, at *4 (6th Cir. Mar.
31, 2010).  *See also Washington v. Spitzer Mgmt., Inc.*, No. 81612,
2003 WL 1759617, at *5 (Ohio Ct. App. Apr. 3, 2003) ("CSPA limits the
damages available in class actions to actual damages . . . .");
*Konarzewski v. Ganley, Inc.*, No. 92623, 2009 WL 3649787, at *8 (Ohio
Ct. App. Nov. 5, 2009) ("[C]lass action plaintiffs must prove actual
damages under the CSPA.").

   Defendant argues that plaintiffs' class claims fail because the
*Complaint* does not contain factual allegations of actual damages.
*Defendant's Motion*, pp. 7-15; *Defendant's Reply*, pp. 6-25.  This Court
agrees.

   The *Complaint* alleges that "damages are readily and easily
calculable and will be a matter of arithmetic once the actual 'regular
price' of Jos. A. suits in Ohio is determined."  *Complaint*, ¶ 57.  The
*Complaint* uses plaintiff Patterson's transaction as an example:

> Because the true regular or average price of a Jos. A. Bank
> "Executive Suit" is, at most, $200-$250, Jos. A. Bank
> deceived Patterson into paying an additional $545-$595 for
> his "regular price" suit to cover the cost of the "free"
> items associated with the "sale", as well as a substantial
> profit for Jos. A. Bank.  Thus, Patterson's compensatory
> damages are the additional amount he paid, beyond the
> suit's true regular price.
>
> Put another way, while Patterson received a number of
> items, none of them were for "free" because he spent at
> least $545 to cover the cost of the "free" offer, which is

14

> exactly what 109:4-3-04 and 109:4-3-12 are meant to protect
> against. That $545 (or the "regular price" paid less the
> *true* regular price is found to be) should be returned to
> Patterson and those similarly situated.

*Id.* at ¶¶ 61-62 (emphasis in original). The *Complaint* alleges that
"[s]imilar examples could be put forth for Patterson and each member
of the putative Class by simply substituting the true 'regular price'
of the suit or sportcoat into each transaction." *Id.* at ¶ 63.
"Damages are easily calculated," the *Complaint* alleges, "by simply
replacing the fake 'regular price' with the real regular price in the
context of each class member's purchase." *Id.* at ¶ 64 (emphasis
omitted).

Plaintiffs now argue that they "did not get the benefit of their
bargain because they received neither free merchandise nor suits that
regularly sold for the advertised 'regular' price." *Plaintiffs'
Response*, p. 12. According to plaintiffs, defendant's "advertising
promised Johnson a suit that Jos. A. Bank regularly sold in the market
place for $795, plus additional merchandise for free. What Johnson
(and class members) actually got was nothing for free and a suit that
Jos. A. Bank regularly sold for a fraction of $795." *Id.* at p. 14.
Plaintiffs rely on Ohio's benefit of the bargain rule and argue that
they "did not get the benefit of their bargain because they received
neither free merchandise nor suits that regularly sold for the
advertised 'regular' price." *Id.* at p. 12.

The "benefit of the bargain" rule provides a method for
calculating damages in an action for fraud; under the rule, the
"proper measure of damages is the difference between the value of the
property as it was represented to be and its actual value at the time

of purchase or exchange." *Brewer v. Bros.*, 611 N.E.2d 492, 496 (Ohio Ct. App. 1992) (citing *Molnar v. Beriswell*, 122 Ohio St. 348 (Ohio 1930)). *See also State v. Rose Chevrolet, Inc.*, No. CA91-12-214, 1993 WL 229392, at *2 (Ohio Ct. App. Jun. 28, 1993) (applying the benefit of the bargain rule in an action under the OCSPA). The parties dispute the applicability of the benefit of the bargain rule at this stage of the litigation. *See Defendant's Reply*, pp. 7-8. Nevertheless, the Court need not reach the merits of the parties' arguments in this regard because plaintiffs' alleged damages misstate the facts and fail to allege a cognizable injury.

First, it is important to note that the *Complaint* does not actually allege that plaintiffs did not receive the "free" items that defendant advertised. Rather, the *Complaint* alleges, and plaintiffs argue, that the purportedly "free" suits received by plaintiffs were not actually free because defendant's advertised "regular price" was inflated to account for the cost of the "free" items. *See e.g.*, *Complaint*, ¶ 18. Plaintiffs actually received four suits for the "regular price" of $795 for one suit. Plaintiffs' calculation of damages does not, however, take into account the fact that plaintiffs received more than one suit.

Plaintiffs argue that damages are equal to the amount actually paid for a single suit less the true regular price of that suit. *See Complaint*, ¶¶ 57, 61-64. For example, plaintiff Patterson alleges that he was damaged in the amount of $545 to $595 because he paid $795 for one suit with an alleged true regular price of $200 to $250. *See id*. at ¶¶ 60-62. This calculation, however, does not account for the

16

fact that plaintiff Patterson actually received four suits, each
allegedly valued at $200 to $250, and not just one.  Based on
plaintiffs' own allegations, plaintiffs actually received $800.00 to
$1000.00 worth of suits for $795.  *See id.*  Accordingly, plaintiffs
have not alleged that they suffered a cognizable injury.

Plaintiffs cite to *Kinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th
Cir. 2013), and argue that defendant's alleged misrepresentation about
price establishes the existence of actual damages.  *Plaintiffs'
Response*, pp. 14-15.  According to plaintiffs, "price advertisements
matter" and "misinformation about a product's 'normal' price"
establishes an "'obvious economic injury' because 'the bargain
hunter's expectations about the product he just purchased is precisely
that it has a higher perceived value and therefore has a higher resale
value.'"  *Id.* at p. 14 (quoting *Hinojos*, 718 F.3d at 1106) (internal
quotations omitted)).  Similarly, plaintiffs argue that the *Complaint*
sufficiently alleges damages because it alleges that defendant "did
not honor the sales promotion's terms because Jos. A. Bank did not
sell the merchandise at its true 'regular price[.]'"  *Plaintiffs'
Response*, p. 12.  Plaintiffs' arguments are not well taken.

Although plaintiffs' allegations of misrepresentation of the
"regular price" in an advertisement also offering free items may be
sufficient to establish an OCSPA violation, those facts do not
sufficiently allege actual injury resulting from the violation.  Under
Ohio law, actual injury is independent of an OCSPA violation and both
must be adequately alleged in a class action under O.R.C. §
1345.09(B).  *See* O.R.C. § 1345.09(B); *Searles v. Germain Ford of*

*Columbus, L.L.C.*, No. 08AP-28, 2009 WL 756645, at *5 (Ohio Ct. App. Mar. 24, 2009) (declining to certify a class under the OCSPA because the plaintiff did not present any evidence of actual injury incurred as a result of the alleged OCSPA violation). Furthermore, plaintiffs' reliance on *Hinojos* is misplaced. In *Hinojos*, the United States Court of Appeals for the Ninth Circuit applied California law to hold "that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under [California's Uniform Competition Law and Fair Advertising Law] because he has suffered an economic injury." *Hinojos*, 718 F.3d at 1107. Even if the California law applied in *Hinojos* were comparable to Ohio law, which it is not, the reasoning of that case would not establish actual injury for purposes of the class allegations in this case. The court in *Hinojos* held that a consumer suffers an injury and has standing to sue when he made a purchase of merchandise that he would not otherwise have made but for false price information. *Id.* The *Complaint* in the case presently before the Court is arguably sufficient to establish that plaintiff Johnson would not have purchased suits but for defendant's alleged misrepresentations, *see Complaint*, ¶ 33 ("Johnson was induced by Jos. A. Bank's advertising and marketing into believing that he was receiving an excellent value by purchasing a suit of such qualify at such a low price – in fact, that was the reason he entered into the transaction with Jos. A. Bank."), but there is no similar allegation that the members of the putative class would not have similar purchased suits from defendant but for

18

defendant's alleged misrepresentations. Accordingly, plaintiffs' class claims would fail even under the reasoning of *Hinojos*.

In short, the *Complaint* does not allege that plaintiffs suffered a legally cognizable injury. Plaintiffs have therefore failed to sufficiently allege actual damages as required for a class action under O.R.C. § 1345.09(B).

Plaintiffs suggest that this conclusion will permit suppliers to make misrepresentations with impunity "so long as the price charged on the receipt was what [the supplier and its expert] claimed the merchandise was worth." *See Plaintiffs' Response*, pp. 18-19. Plaintiffs miss the mark in this regard. As recognized by the courts in *Rose Chevrolet, Inc.*, 1993 WL 229392, and *Lewis v. Ganley Akron, Inc.*, No. CV 2001 05 2544, 2004 WL 5518155 (Ohio Com. Pl. Feb. 10, 2004) (attached to *Plaintiffs' Response* as Doc. No. 23-1), a consumer is entitled to recover under Ohio law if a supplier misrepresents the quality, style, or model of the subject of a consumer transaction. *See* O.R.C. § 1345.02(B)(2); *Rose Chevrolet, Inc.*, 1993 WL 229392 (awarding damages in an OCSPA class action where an auto dealer misrepresented cars to be "factory official," when they were not); *Lewis*, 2004 WL 5518155 (awarding damages under the OCSPA where an auto dealer refused to honor an agreement and testified that it never intended to honor the agreement). However, as discussed *supra*, the *Complaint* does not state a claim under O.R.C. § 1345.02(B)(2). Moreover, even a consumer who cannot establish actual damages in connection with a misrepresentation about a product's price is nevertheless entitled to relief under the OCSPA; such a consumer may,

in an individual action, rescind the transaction or recover statutory damages. *See* O.R.C. § 1345.09(A). In class actions, however, actual injury is required "to protect defendants from huge damage awards." *Washington*, 2003 WL 1759617 at *5 (emphasis omitted). Where, as here, the *Complaint* fails to allege actual injury or damage as a result of the alleged OCSPA violation, the class claims cannot proceed.

Defendant also argues that plaintiffs' individual claims must be dismissed because the *Complaint* fails to allege facts showing that plaintiffs purchased suits from defendant in Ohio. *Defendant's Motion*, p. 19; *Defendant's Reply*, p. 30. This Court agrees.

The Ohio Consumer Sales Practices Act "'is only applicable if the offending conduct took place within the territorial borders of the state of Ohio.'" *Delahunt v. Cytodyne Techs.*, 241 F.Supp. 2d 827, 839 (S.D. Ohio Jan. 24, 2003) (quoting *Shorter v. Champion Home Builders Co.,* 776 F.Supp. 333, 338-39 (N.D. Ohio 1991)). *See* O.R.C. § 1345.04. In the case presently before the Court, the *Complaint* alleges that plaintiffs are Ohio residents, that defendant operates stores throughout Ohio, and that the transactions referenced in the *Complaint* are consumer transactions as defined by O.R.C. § 1345.01(A). *See Complaint*, ¶¶ 9-13. Significantly, the *Complaint* does not allege that the consumer transactions about which plaintiffs complain occurred in Ohio.[3] Accordingly, the *Complaint* is deficient because it does not allege that defendant's misconduct took place within the State of Ohio.

---

[3] O.R.C. § 1345.01(A), to which the *Complaint* refers, does not limit actionable "consumer transactions" to those that occur within the State of Ohio.

     **WHEREUPON**, based on the foregoing, *Defendant's Motion*, Doc. No. 12, is **GRANTED**.

     Because it is unclear, at this juncture, whether plaintiffs can and intend to amend the *Complaint* to address the deficiencies identified herein, the Court will not dismiss the entire action.  The Court will discuss this and other appropriate issues with counsel for the parties at the continued preliminary pretrial conference currently scheduled for January 9, 2014, at 2:00 p.m.


January 8, 2014                          *s/Norah McCann King*
                                     Norah M$^{c}$Cann King
                         United States Magistrate Judge