UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MATTHEW B. JOHNSON**<br>5904 Andrew John Drive<br>New Albany, OH  43054<br><br>and<br><br>**CHARLES DREW PATTERSON**<br>2309 Trophy Drive<br>Marysville, OH  43040<br><br>*On Behalf of Themselves and Those Similarly Situated*<br><br>Plaintiffs<br><br>vs.<br><br>**JOS. A. BANK CLOTHIERS, INC.**<br>c/o C T Corporation System<br>1300 East Ninth Street<br>Cleveland, OH  44114<br><br>Defendant | CASE NO. 2:13-cv-00756-GCS-NMK<br><br>MAGISTRATE JUDGE<br>NORAH McCANN KING<br><br><br><br><u>**FIRST AMENDED CLASS ACTION COMPLAINT**</u><br><br>**[Jury Demand Endorsed Hereon]** |

Plaintiffs, Matthew Johnson and Charles Patterson, through undersigned counsel, on behalf of themselves and all Ohio residents similarly situated, allege the

following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## INTRODUCTION

1. This case is about Jos. A. Bank's deceptive and unlawful use of the words "free" and "regular price" in promotional materials advertising Jos. A. Bank's suit, sportcoat and dress pants "sales."

2. Jos. A. Bank's "buy one get one free" suit offers and other similar promotions require consumers to buy one "regular price" suit to get one (or more) suit for free. But the stated "regular price" is a fabrication. It is a price no consumer has ever actually paid for a Jos. A. Bank suit not in connection with some sale or discount.

3. The Ohio Attorney General has expressly declared such practices "inherently deceptive" in Ohio Administrative Code 109:4-3-04, which states in part:

> It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. In the absence of such a base price a "free" offer is in reality a single price for the combination of goods or services offered, and the fiction that any portion of the offer is "free" is inherently deceptive.

4. This lawsuit seeks damages for Jos. A. Bank's inflation of advertised regular prices – above actual market value and the true "regular price" of the merchandise – in violation of the CSPA. These damages can be assessed on a per transaction basis across the Class.

5. For reasons made clear below, a class action lawsuit is the most efficient way to remedy the harm done by Jos. A. Bank's deceptive sales practices and to make whole the Ohio consumers they have systematically deceived and misled.

2

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Jos. A. Bank.

7. Venue is proper in the Southern District of Ohio, pursuant to 28 U.S.C. § 1391, because Jos. A. Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

8. The named Plaintiffs are Ohio residents, residing in the Southern District of Ohio, and each is a "consumer" as defined by R.C. § 1345.01(D). Each has purchased items of clothing from Defendant in Ohio.

9. Similarly, all members of the putative Class are Ohio residents and each is a "consumer" as defined by R.C. § 1345.01(D) who purchased Defendant's goods in Ohio. All of the relevant "consumer transactions" took place in Ohio.

10. Defendant Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank" or "Defendant") is a publicly-traded Delaware corporation with its principal place of business in Maryland.

11. Jos. A. Bank operates a national chain of retail clothing stores and is a "supplier" as defined by R.C. § 1345.01(C). Defendant operates approximately twenty-five (25) stores throughout Ohio, including four (4) stores in Franklin County.

12. Jos. A. Bank engages in thousands of "consumer transactions" throughout Ohio as defined by R.C. § 1345.01(A). All transactions referenced in this complaint are consumer transactions under the CSPA.

## THE CONSUMER TRANSACTIONS BETWEEN JOHNSON, PATTERSON AND JOS. A. BANK

13. On or about May 1, 2013, Plaintiff Johnson purchased a suit from Defendant at a store operated by Defendant in Ohio, for what Defendant advertised via television, the internet, postcards and other outside advertisements, as well as in-store – as the purported "regular price" of $795. This purchase was a "consumer transaction" as defined by R.C. § 1345.01(A). As an incentive to purchase the suit, Defendant promised to give Johnson three "free" suits.

14. On or about March 2, 2013, Plaintiff Patterson purchased a suit from Defendant at a store operated by Defendant in Ohio, for what Defendant advertised via television, the internet, postcards and other outside advertisements, as well as in-store – as the purported "regular price" of $795. This purchase was a "consumer transaction" as defined by R.C. § 1345.01(A). As an incentive to purchase the suit, Defendant promised to give Patterson three "free" suits.

15. Plaintiffs were promised that if they purchased a suit at "regular price," that they would receive three suits for "free."

16. However, these "regular prices" were vastly inflated above the true regular market price regularly paid by consumers for Jos. A. Bank suits.

17. The "regular price" was grossly inflated by Jos. A. Bank above the suits' market value in order to pass the costs of the "free suits" on to the Plaintiffs, while still making a substantial profit.

4

18. Each of Johnson and Patterson considered the "regular price" of the suits in making their purchasing decision and would not have engaged in the transaction but for the misrepresented "regular price."

19. The Class members all purchased suits under substantially similar conditions as Plaintiffs throughout the Class period.

## JOS. A. BANK INFLATES THE "REGULAR PRICE" OF ITS MERCHANDISE

20. Throughout the Class period and on a near continuous basis, Jos. A. Bank frequently advertised the following various offer for suits: "Buy 1 (suit at "regular" price) get 3 (suits) FREE!", "Buy a Suit, Get 2 Suits, 2 Dress Shirts, 2 Silk Ties FREE!", "ENTIRE STORE!, Buy Any 1, GET 2 FREE!", "Buy Any Suit, Get 1 Suit, 2 Shirts, 2 Silk Ties FREE!", "THREE TIMES THE SUIT SALE! Buy 1 Suit, Get 2 FREE!" and so on.

21. Jos. A. Bank advertised similar or identical sales with regard to sportcoats and dress pants, including "Buy one sportcoat get one free!" and "Buy one sportcoat get two shirts and two dress pants free!"

22. In each case, Jos. A. Bank based these purported "sales" on phantom "regular prices" – prices which do not reflect the true market price regularly paid by consumers for their suits.

23. The deceptive "sales" in the past two years are perpetual. In reality, Jos. A. Bank suits, sportcoats and dress pants are on "sale" almost 100% of the time.

24. A review of the Company's website as of the time this Complaint was drafted did not reveal a single suit, pair of dress pants or sportcoat being sold at "regular price," that was not part of a sale.

5

25. Because Jos. A. Bank suits are never, or almost never, sold at what Jos. A. Bank touts as "regular price", the purported "regular price" is by definition not "regular," and is, instead, illusory.

26. Each and all of Jos. A. Bank's "free" suit sales are subject to the terms that each free suit must be of "equal or lesser <u>value</u>" than the suit that is purchased. That is, Jos. A. Bank, in its own advertising, specifically conflates the "regular price" of its clothing with the clothing's market value.

27. Exemplars of marketing materials that Jos. A. Bank has used to tout its "sales" in the past 2 years are attached as Exhibit 1. Jos. A. Bank has also advertised "free" sales via the internet, television, radio, e-mail, direct phone calls to consumers and out-of-store signage. In each case, Jos. A. Bank has falsely promised that its suits have a certain "regular price".

28. When then-New York State Attorney General Eliot Spitzer investigated Jos. A. Bank's sales practices in New York in 2003, he found that less than 1% of Jos. A. Bank's suits, formal wear, dress pants and sportcoats were sold at the purported "regular price." Assurance of Discontinuance attached as Exhibit 2. On information and belief, a similar number of suits suit in Ohio are sold at "regular price."[1]

29. Per the Company's most recent 10-K, Jos. A. Bank's sales practices are currently being investigated by the Attorney General's office in both Georgia and Florida. 10-K attached as Exhibit 3.

---

[1] It appears Jos. A. Bank did temporarily cease to use the particular deceptive marketing practices for which the New York State Attorney General fined them in 2004 in the state of New York. They continued to use those practices, which are substantially similar to the practices alleged herein, elsewhere and, on information and belief, have also since returned to using them in New York State.

6

30. Publicly available information about Jos. A. Bank's suits demonstrates that its suits, sportcoats and dress slacks are designed and manufactured by Jos. A. Bank or exclusively for Jos. A. Bank for retail sales through its in-store and internet marketing channels. Publicly available financial information and analysis of its ongoing sales in Ohio demonstrates that the true market value of Jos. A. Bank's suits, sportcoats and dress pants is 30% or less of the regular price it advertised. Jos. A. Bank still maintains an approximately 60% gross margin on its suits, sportcoats and dress pants <u>even after all sales and promotions</u>. *See* 10-K at p. 38. This is how Jos. A. Bank can afford to have a "three times the suit" sale or a "Buy 1, Get 3 Free" sale while still generating significant profits. Jos. A. Bank simply passes the costs of its "sales" on to the consumer.

31. That deception proximately injures and damages the consumer who is not getting the "deal" or "bargain" promised, but rather, is paying an inflated "regular price" for suits, sportcoats and dress slacks that have a fraction of the market value or "regular price" claimed by Jos. A. Bank.

32. Johnson was induced by Jos. A. Bank's advertising and marketing into believing that he was receiving an excellent bargain by purchasing a suit at its fair market value while also receiving additional free merchandise – in fact, he would not have entered into the transaction with Jos. A. Bank but for that inducement.

33. However, in producing Johnson's suit and, in fact, all of their suits, Jos. A. Bank did not employ the quality of materials, construction or standards of craftsmanship one would expect of a suit with the retail price they advertised – in the case of Johnson's suit, $795. The true market value of the suit Johnson and each Class

member purchased was not remotely commensurate with the regular retail price advertised by Jos. A. Bank.

34. For example, Jos. A. Bank has a current promotion with a "price that works for you" of $275 on its signature suits. Yet, during Jos. A. Bank "free" sales, it claimed the signature suits had a "regular price" of $795.

35. In sum, Plaintiffs and proposed Class members are getting suits that have a true market value nowhere near the claimed "regular price."

36. By the lapse of time, the "sales price" of Jos. A. Bank's suits, sportcoats and dress pants has become the true "regular price" due to the fact that the sales are never ending. OAC 109:4-3-04(H). Thus, the stated regular price and the offer of "free" goods are illusory and deceptive.

37. Plaintiffs and the proposed Class relied upon the Defendant's misrepresentations and those misrepresentations were made as to a material term of the sale – the market value of the suits being purchased.

38. Jos. A. Bank also states that its sales are for a "limited time" or "today only" or the like. This practice is also false and deceptive, because as soon as one sale ends, another substantially similar sale begins.

39. Jos. A. Bank spends millions of dollars within Ohio to promote its deceptive sales tactics and has done so with great success to date. Throughout the Class period, Jos. A. Bank has sold thousands of suits, sportcoats or dress pants to Ohioans in violation of the Consumer Sales Practices Act – and specifically in violation of OAC 109:4-3-04. Those sales have generated millions of dollars in profits for the Company.

## OHIO BANS THE DECEPTIVE INFLATION OF "REGULAR PRICES" IN CONNECTION WITH SALES OFFERS

40. Ohio's regulatory framework protects consumers from unscrupulous suppliers and also benefits honest suppliers who do not tout false "free" and reduced price sales.

41. As shown above, throughout the Class period, Jos. A. Bank systematically, continuously and repeatedly advertised and sold men's suits, sportcoats and dress pants in connection with illusory and deceptive "free" offers in violation of OAC 109:4-3-04, which begins by stating:

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to use the word "free" or other words of similar import or meaning, except in conformity with this rule. It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. In the absence of such a base price a "free" offer is in reality a single price for the combination of goods or services offered, and the fiction that any portion of the offer is "free" is inherently deceptive.

42. In Ohio, "regular price" is a term of art defined by OAC 109:4-3-04(F):

> **(F) (1)** "Regular price" means the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time. A price is not a regular price if:
>
> **(a)** It is not the supplier's actual selling price;
> **(b)** It is a price which has not been used in the recent past; or
> **(c)** It is a price which has been used only for a short period of time.

43. Jos. A. Bank's claimed "regular price(s)" during its frequent sales do not meet this definition because the advertised regular price is not its actual selling price and/or it is a price which has been used only for a short period of time.

9

44. Because OAC 109:4-3-04(A) makes clear that the term "free" may not be used to describe what is effectively a combination sale, the "regular price" cannot be considered as having been paid for <u>all</u> merchandise received.

### **COUNT I: OHIO CSPA VIOLATION (R.C. § 1345.01 *et seq.*)**

45. As stated above, throughout Ohio, Defendant Jos. A. Bank engages in an aggressive marketing campaign through frequent use of television commercials, targeted mailings, Facebook, email, targeted telephone campaigns and in-store advertising during its deceptive and illusory suit "sales."

46. While the terms of Jos. A. Bank's "free" sales may change slightly from sale-to-sale, each sale violates established rules that Ohio's Attorney General has promulgated under the CSPA. And during each "sale", Defendant treats its customers in a uniform manner by inducing them to buy suits, sportcoats and dress slacks at prices well above actual market prices by providing them "free" goods.

47. Throughout the Class period, Jos. A. Bank's sales were not in conformity with – and in direct violation of – OAC 109:4-3-04, which is a rule promulgated by the Ohio Attorney General under R.C. § 1345.05 and which amplifies R.C. § 1345.02.

48. The administrative Rule specifically states, among other things:

> i. It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. ***OAC 109:4-3-04(A)(1).

49. Under the rule, "free" means, "(B) For the purposes of this rule, all references to the word "free" shall include within that term all other words of similar

10

import and meaning. Representative of the word or words to which this rule is applicable would be the following: "Free", "Buy 1, Get 1 Free", "2 for 1 Sale" and "50% Off with Purchase of 2".

50. Further, under provision (F)(1) of the Rule, "regular price" means the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time. A price is not a regular price if: (a) It is not the supplier's actual selling price; (b) It is a price which has not been used in the recent past; or (c) It is a price which has been used only for a short period of time."

51. Jos. A. Bank's claimed "regular price" does not meet this definition.

52. Finally, division (H) of the Rule states:

> ii. **Continuous or repeated "free" offers are deceptive acts or practices since the supplier's regular price for goods to be purchased by consumers in order to avail themselves of the "free" goods will, by lapse of time, become the regular price for the "free" goods or services together with the other goods or services required to be purchased. Under such circumstances, therefore, an offer of "free" goods or services is merely illusory and deceptive.**

53. OAC 109:4-3-04(E) states that "[o]nly the supplier's regular price may be used as the basis for a "free" offer. It is, therefore, a deceptive act or practice for a supplier to offer "free" goods or services based on a price which exceeds the supplier's regular price for the other goods or services required to be purchased.

54. Based upon the foregoing and the remainder of OAC 109:4-3-04, Jos. A. Bank was on specific notice that its conduct in connection with the marketing and sales of its suits, sportcoats and dress slacks was an inherently deceptive act or practice in violation of OAC 109:4-3-04 and R.C. § 1345.02.

55. For example, when Plaintiff Johnson bought his "regular price" suit for $795, he was told he was receiving 3 "free" suits. However, the suit did not actually have a regular price of $795 because Jos. A. Bank never actually sold that suit for $795 (without it being accompanied by one or more "free" suits). The market value of the suit was substantially lower. By misrepresenting an inflated market value of its suits, Jos. A. Bank was able to pass the cost of the "free" offer onto Johnson in violation of Ohio law.

56. Jos. A. Bank's conduct has been widespread, uniform and systematic throughout Ohio; therefore, a Class action is appropriate under R.C. § 1345.09. Jos. A. Bank's conduct has harmed Plaintiffs and the Class members by overcharging for its suits, sportcoats and dress slacks in excess of their regular market price.

57. While the Class members may have different magnitudes of damages depending upon the "sale" ongoing at the time of their purchase, the damages are readily and easily calculable and will be a matter of arithmetic once the actual "regular price" of Jos. A. suits in Ohio is determined.

58. Jos. A. Bank keeps detailed sales data and those true "regular prices" can be easily determined by the finder of fact.

**DAMAGES**

59. With the data from Jos. A. Bank, the finder of fact will be able to reach determinations as to the true market value price of each of Jos. A. Bank's suits.

60. Jos. A. Bank has *never* had a true "regular price" of $795 for the suit Patterson purchased, for example. The true regular price or market value for this suit is a fraction of $795.

12

61. Jos. A. Bank calculatedly denied plaintiffs and the putative class the benefit of the advertised bargain. Plaintiffs and the class members were promised and paid for merchandise with a certain market value and – as a matter of law – are entitled to receive the benefit of the "free" offer without being charged a fraudulent "regular price" by Jos. A. Bank.

62. Put another way, while Patterson received a number of items, none of them were the item he paid for – a suit with a market value of $795. And he certainly did not receive 4 suits <u>each</u> with a market value of $795 – a total value of $3,180 – which was the deal he was promised. It is therefore <u>necessarily</u> true that Patterson paid an inflated "regular price" to cover the cost of the "free" merchandise.

63. Plaintiff's damages can be calculated and his injury defined by the difference between what he was told he would pay for 4 suits (that is, the true <u>regular price</u> of <u>one suit</u> – where regular price has a required statutory definition) and what he was actually required to pay to receive the 4 suits (here $795, an inflated number unrelated to the true regular price of the suits).

64. Each Class member has incurred similar damages caused by Jos. A. Bank passing the costs of its sales on to the Class members. The damages will vary depending on the items purchased and the particular sale, but are easily ascertainable on a Class-wide basis.

65. Further, in most – if not every – consumer transaction between Plaintiffs, the putative class, and Jos. A. Bank, the Company passed along the cost of its sale in an amount greater than the $200 statutory penalty permitted under R.C. § 1345.09. In sum, Plaintiffs' actual economic damages exceed the available statutory damages.

## COUNT II: BREACH OF CONTRACT

66. Plaintiffs incorporate by reference the allegations set forth above.

67. While Defendant Jos. A. Bank's "sales" were pervasive, each of Defendant's advertisements touted specific "sales" at specific prices for various specific durations of time at various intervals throughout the last several years.

68. The advertisements were clear, definite and left nothing open for negotiation. Jos. A. Bank does not negotiate its suit or major apparel prices with individual consumers.

69. The Company's advertisements constituted offers, the acceptance of which completed a binding contract.

70. Plaintiffs and the putative class accepted Defendant's offers upon tendering payment.

71. Upon payment, Defendant was required to perform its promises made in its advertisements, including, for example, delivering to Plaintiff Johnson four suits with certain "regular" market prices – *i.e.*, each suit was promised to be worth the advertised price – in exchange for a single payment for one of the suits. In Johnson's case, $795.00 *each*. This is also true across the putative class.

72. Defendant Jos. A. Bank breached its promise to Plaintiffs and to the putative class because, in exchange for their payments, Defendant delivered suits that were worth far less than promised. Defendant did not fulfill its promise.

73. This breach proximately damaged Plaintiffs and the putative class.

74. Plaintiffs and the class members are entitled to be compensated in an amount to put them in a position as if Defendant had fully performed its promises and delivered goods worth the values advertised.

## CLASS CERTIFICATION IS APPROPRIATE

75. Consumer cases are ideally suited for class treatment.

76. Section 1345.09(B) of the Revised Code provides:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of Section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate Sections 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of Section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

77. Thus, the General Assembly has specifically provided for class treatment of cases of this nature.

78. To Plaintiffs' knowledge, no other class action of this nature is pending against this Defendant in Ohio.

79. Moreover, there are no parallel pending individual actions.

80. Each Class member has been damaged in a relatively modest amount, making individual actions impracticable.

81. There are thousands of Class members, making joinder impractical.

82. A class action is the superior method of resolving this dispute.

15

83. Plaintiffs are intelligent, understand the claims and are able to represent the interests of the Class.

84. The interests of Plaintiffs are not antagonistic to the Class.

85. Plaintiffs have chosen attorneys who are experienced in CSPA cases, class action and complex litigation. Counsel and the Class representatives will adequately and diligently pursue the interests of the Class.

86. There are common questions of fact and law that predominate across the Class. For example, whether the Class member purchased a suit within the Class period; whether the suit was purchased during a "free" sale; whether the cost of the "free" items was actually borne by inflating the regular price of the suit; the actual number of suits and other items sold at the claimed regular price absent a sale, etc.

87. The Plaintiffs relied on the Defendant's misrepresentations and those misrepresentations were as to a material term of the sale – the market value of the suits being purchased.

88. Further, because Jos. A. Bank's advertising, pricing and conduct is essentially uniform across its Ohio stores, the legal issues will be common across the Class. The common questions of fact and law will have common answers throughout the Class.

89. The claims are typical across the Class and the defenses will be typical across the Class.

90. As a matter of public policy, this consumer matter should proceed as a consumer class action that will produce several salutary byproducts, including: (1) a therapeutic effect upon those sellers who indulge in deceptive practices; (2) aid to

legitimate business enterprises by curtailing illegitimate competition, and (3) avoidance to the judicial process of the burden of multiple litigation involving identical claims.

91.     The class should be defined as follows:

- **All persons who purchased a suit, dress pants or sportcoats/suit jackets at a Jos. A. Bank retail store in Ohio, within two years of filing of this Complaint, where the purchase was for one item based on a "regular price" in connection with an offer of at least one other "free" item.**

92.     The Class should be certified and each Class member should be compensated in a manner that will put the Class member in a position the member would be had Jos. A. Bank not inflated the regular price several times higher than the actual market value of the merchandise sold in order to pass the cost of the "free" merchandise onto the consumer in violation of the CSPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Jos. A. Bank's sales and marketing practices to be wrongful, unfair, unconscionable and in violation of Ohio law;

2.     Enjoining Jos. A. Bank from further use of inflated "regular price" descriptions and order compliance with R.C. § 1345.02 and the associated Administrative Rules;

3.     Compensatory damages in an amount according to proof;

4.     Prejudgment interest at the maximum rate permitted by applicable law;

5.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees, pursuant to applicable law; and

17

6. Such other relief as this Court deems just and proper.

## JURY DEMAND

Now come Plaintiffs, by and through counsel, and hereby requests that the within matter be tried by a jury of the maximum number allowed by law.

| | |
|---|---|
| **Date:** January 31, 2014 | s/ Stuart E. Scott<br>STUART E. SCOTT  (0064834)<br>DANIEL FRECH  (0082737)<br>**SPANGENBERG SHIBLEY & LIBER LLP**<br>1001 Lakeside Avenue East, Suite 1700<br>Cleveland, OH  44114<br>(216) 696-3232<br>(216) 696-3924 (FAX)<br>*sscott@spanglaw.com*<br>*dfrech@spanglaw.com*<br><br>ANDREW R. MAYLE  (0075622)<br>JEREMIAH S. RAY  (0074655)<br>**MAYLE, RAY & MAYLE**<br>210 South Front Street<br>Fremont, OH  43420<br>(419) 334-8377<br>(419) 355-9698 (FAX)<br>*amayle@mayleraymayle.com*<br>*jray@mayleraymayle.com* |

OF COUNSEL:

HASSAN A. ZAVAREEI  (DC 456161)
*(PHV Forthcoming)*
JEFFREY KALIEL  (CA 238293)
*(PHV Forthcoming)*
**TYCKO & ZAVAREEI, LLP**
2000 L Street, NW, Suite 808
Washington, DC  20036
(202) 973-0900
(202) 973-095 (FAX)
*hzavareei@tzlegal.com*
*jkaliel@tzlegal.com*

***Counsel for Plaintiffs and the Proposed Class***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of January 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

s/ Stuart E. Scott
STUART E. SCOTT  (0064834)
DANIEL FRECH  (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*dfrech@spanglaw.com*

***Counsel for Plaintiffs and the Proposed Class***