```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

**MATTHEW B. JOHNSON, *et al.*,**

    **Plaintiffs,**

  **vs.**                                **Civil Action 2:13-cv-756**
                                              **Magistrate Judge King**

**JOS. A. BANK CLOTHIERS, INC.,**

    **Defendant.**

## OPINION AND ORDER

Plaintiffs instituted this action on behalf of themselves and a putative class of Ohio residents, alleging multiple violations of the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 *et seq.*, and rules promulgated thereunder, in connection with defendant's marketing practices based on allegedly false advertised regular prices. *Complaint*, Doc. No. 1.  On January 8, 2014, the Court granted defendant's motion to dismiss the class allegations, reasoning that plaintiffs had failed to allege actual damages, a prerequisite to a class action under the OCSPA.  *Opinion and Order*, ECF 30.[1]  Plaintiffs filed the *Amended Complaint*, ECF 32, on January 31, 2014.  This matter is now before the Court with the consent of the parties, see  28 U.S.C. § 636(c), on  *Defendant Jos A. Bank Clothier, Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint* ("*Defendant's Motion*"), Doc. No. 33. Plaintiffs' motion for leave to file *Plaintiffs' Amended Brief in Opposition to Defendant's Motion to*

---

[1] The Court also concluded that, although the individual plaintiffs may be able to state a colorable claim for relief under Ohio Admin. Code § 109:4-3-04, these individual claims were deficient because the *Complaint* failed to allege that the transactions occurred in Ohio.  *Opinion and Order*, ECF 30, PageID # 462.

*Dismiss* ("*Plaintiffs' Response*"), Doc. No. 35, is **GRANTED**. In resolving *Defendant's Motion*, the Court has considered *Plaintiffs' Response*, which is attached to ECF 35. Defendant has filed a reply in support of *Defendant's Motion*. *Defendant's Reply*, ECF 36. Because the Court concludes that oral argument is unnecessary, plaintiffs' request for oral argument in connection with the resolution of *Defendant's Motion* is **DENIED**.

**I.**

Defendant Jos A. Bank Clothiers, Inc., is a Delaware corporation with its principal place of business in Maryland. *Amended Complaint*, ¶ 10. Defendant operates a national chain of retail clothing stores and has approximately twenty-five stores throughout Ohio, including four stores in Franklin County, Ohio. *Id*. at ¶ 11. Defendant frequently advertises sales via "television commercials, targeted mailings, Facebook, email, targeted telephone campaigns and in-store advertising" in which the purchaser of one suit at the "regular" price receives a specified number of additional suits for free. *See id*. at ¶¶ 20-21, 41, 46.

The named plaintiffs, Matthew Johnson and Charles Patterson, are Ohio residents. *Id*. at ¶8. In 2013, each purchased a suit from defendant at a store operated by defendant in Ohio. *Id*. at ¶¶ 13-14. Plaintiffs purchased their suits at "the purported 'regular price' of $795" and, based on the advertised sale at the time, each was promised "three 'free' suits." *Id*. at ¶¶ 13-15. Plaintiffs do not allege that they did not receive four suits in exchange for their payment of $795, nor do they allege that the four suits actually received by them were

2

worth, collectively, less than $795 or that they could have obtained four suits of similar quality elsewhere for less than $795. Plaintiffs do allege, however, that the "regular price" of each purchased suit was "vastly inflated above the true regular market price regularly paid by consumers for Jos. A. Bank suits." *Id*. at ¶ 16.  Plaintiffs further allege that the "regular price" of the suits "was grossly inflated by Jos. A. Bank in order to pass the costs of the 'free suits' on to the Plaintiffs." *Id*. at ¶ 17.

According to plaintiffs, defendant's suits are "almost never" sold at the "regular price;" plaintiffs believe that fewer than one percent of defendant's suits sold in Ohio are sold at the "regular price." *Id*. at ¶¶ 23-25, 27.  Because defendant's suits "are on 'sale' almost 100% of the time," defendant's advertised "regular prices" "do not reflect the true price regularly paid by consumers for their suits." *Id*. at ¶ 22-23; *see also id*. at ¶ 38 ("[A]s soon as one sale ends, another substantially similar sale begins.")  In addition, plaintiffs allege that, because Jos. A. Bank suits are almost never sold at the regular price, "the purported 'regular price' is by definition not 'regular,' and is, instead, illusory." *Id*. at ¶ 25; *see also id.* at ¶ 36 ("the 'sales price' of Jos. A. Bank's suits. . . has become the true 'regular price' due to the fact that the sales are never ending.")  Moreover, plaintiffs allege,

> [t]hat deception proximately injures and damages the consumer who is not getting the "deal" or "bargain" promised, but rather, is paying an inflated "regular price" for suits, sportcoats and dress slacks that have a fraction of the market value or "regular price" claimed by Jos. A. Bank.

*Id*. at ¶ 31.

3

Plaintiffs purport to bring the action on behalf of a plaintiff class defined as

> [a]ll persons who purchased a suit, dress pants or sportcoats/suit jackets at a Jos. A. Bank retail store in Ohio, within two years of filing of this Complaint, where the purchase was for one item based on a "regular price" in connection with an offer of at least one other "free" item.

*Id*. at ¶ 91.[2]

The *Amended Complaint* alleges that defendant's pricing practice, which allegedly qualifies as a deceptive act or practice under Ohio Admin. Code § 109:4-3-04, violates the OCSPA. Plaintiffs also assert a claim of breach of contract:

> The advertisements were clear, definite and left nothing open for negotiation. . . . The Company's advertisements constituted offers, the acceptance of which completed a binding contract. . . . Plaintiffs and the putative class accepted Defendant's offers upon tendering payment. Upon payment, Defendant was required to perform its promises made in its advertisement, including, for example, delivering . . . four suits with certain "regular" market prices – *i.e.*, each suit was promised to be worth the advertised price – in exchange for a single payment for one of the suits.

*Id*. at ¶¶ 68 – 71. When defendant delivered "suits that were worth far less than promised," plaintiffs allege, defendant acted in breach of its contract with its customers. *Id*. at ¶ 72.

The *Amended Complaint* seeks declaratory, injunctive and monetary relief. *Id*. at PageID # 481.

Defendant asks that the *Amended Complaint* be dismissed in its entirety. *Defendant's Motion.*

---

[2] For simplicity's sake and because the named plaintiffs allegedly purchased suits, this *Opinion and Order* will refer to only suits.

4

**II.**

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *See Roth Steel Prods. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether dismissal on this basis is appropriate, a complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Fed. Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). The United States Supreme Court has explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**III.**

**1. The Claim under the OCSPA**

The OCSPA prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction. O.R.C. § 1345.02(A). The OCSPA also authorizes the Ohio Attorney General to promulgate "substantive rules defining . . . acts or practices that violate" the OCSPA. O.R.C. § 1345.05(B)(2). Where a

5

consumer establishes a deceptive act by a supplier in violation of such a rule,

> the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

O.R.C. 1345.09(B).

The *Amended Complaint* asserts a claim under a rule promulgated pursuant to the OCSPA, Ohio Admin. Code § 109:4-3-04, which regulates suppliers' use of the word "free" in advertisements. That rule provides, in pertinent part, as follows:

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to use the word "free" or other words of similar import or meaning, except in conformity with this rule. It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. In the absence of such a base price a "free" offer is in reality a single price for the combination of goods or services offered, and the fiction that any portion of the offer is "free" is inherently deceptive.

O.A.C. § 109:4-3-04(A).  Where, as is alleged here, there is

> a consumer transaction in which goods or services are offered as 'free' upon the purchase of other goods or services the supplier must insure:
>
> (1) That the unit regular price charged for the other goods or services is not increased, or if there is no unit regular price, the unit price charged for the other goods or services is continued for a reasonable period of time[.]

O.A.C. § 109:4-3-04(D)(1).  In addition,

> [o]nly the supplier's regular price for the goods or services to be purchased may be used as the basis for a "free" offer. It is, therefore, a deceptive act or practice for a supplier to offer "free" goods or services based on a price which exceeds the supplier's regular price for other goods or services required to be purchased.

O.A.C. § 109:4-3-04(E). "Regular price" is defined as

> the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time. A price is not a regular price if:
>
> (a) It is not the supplier's actual selling price;
>
> (b) It is a price which has not been used in the recent past; or
>
> (c) It is a price which has been used only for a short period of time.

O.A.C. § 109:4-3-04(F)(1). Moreover,

> [c]ontinuous or repeated "free" offers are deceptive acts or practices since the supplier's regular price for goods to be purchased by consumers in order to avail themselves of the "free" goods will, by lapse of time, become the regular price for the "free" goods or services together with the other goods or services required to be purchased. Under such circumstances, therefore, an offer of "free" goods or services is merely illusory and deceptive.

O.A.C. § 109:4-3-04(H).

The *Amended Complaint* specifically alleges that defendant advertises sales of suits in which the purchaser of one suit at the "regular" price of $795 receives three additional suits for free. *See id*. at ¶¶ 20-21, 41, 46. Plaintiffs also allege, however, that defendant's suits are "almost never" sold at the "regular price." *Id*. at ¶¶ 23-25, 27. Thus, plaintiffs contend, defendant's advertised "regular prices" "do not reflect the true price regularly paid by consumers for their suits." *Id*. at ¶ 22. Because suits are almost never sold at the "purported 'regular price,'" that price is illusory

7

and it is the "sale price" that is the true regular price. *Id.* at ¶¶ 25, 36.

This Court previously concluded, *Opinion and Order*, ECF 30, that these allegations sufficiently plead a violation of Ohio Admin. Code § 109:4-3-04.[3]  The Court now reaffirms that conclusion.

This Court also previously held, however, that the class claims could not proceed because the OCSPA limits relief in connection with such claims to actual damages, which the original *Complaint* had not adequately alleged. *Opinion and Order*, ECF 30, PageID # 458-59. ("Plaintiffs argue that damages are equal to the amount actually paid for a single suit less the true regular price of that suit. . . . This calculation, however, does not account for the fact that plaintiff[s] actually received four suits. . . .").

> Although plaintiffs' allegations of misrepresentation of the "regular price" in an advertisement also offering free items may be sufficient to establish an OCSPA violation, those facts do not sufficiently allege actual injury resulting from the violation.  Under Ohio law, actual injury is independent of an OCSPA violation and both must be adequately alleged in a class action under O.R.C. § 1345.09(B).

*Id*. at PageID #459(citing *Searles v. Germain Ford of Columbus, L.L.C.*, No. 08AP-28, 2009 WL 756645, at *5 (Ohio Ct. App. Mar. 24, 2009)).

In order to maintain a class action in connection with a violation of a rule promulgated under the OCSPA, a plaintiff must allege actual "damages [that] were a proximate result of the defendant's deceptive act."  *Butler v. Sterling, Inc.*, 210 F.3d 371, at *4 (6th Cir. Mar. 31, 2010).  *See also Konarzewski v. Ganley, Inc.*,

---

[3] As noted *supra*, however, the Court also held that the claim, as alleged, failed because there was no allegation that the transactions at issue had occurred in the State of Ohio. *Opinion and Order*, PageID #455.

8

No. 92623, 2009 WL 3649787, at *8 (Ohio Ct. App. Nov. 5, 2009) ("[C]lass action plaintiffs must prove actual damages under the CSPA."); *Washington v. Spitzer Mgmt., Inc.*, No. 81612, 2003 WL 1759617, at *5 (Ohio Ct. App. Apr. 3, 2003) ("CSPA limits the damages available in class actions to actual damages . . . ."). Defendant argues that plaintiffs' class claims must fail because, like the original *Complaint*, the *Amended Complaint* does not contain factual allegations of actual damages. *Defendant's Motion*, PageID #680-87; *Defendant's Reply*, PageID #846-861.

The *Amended Complaint* claims damages based on a theory of loss of the benefit of the advertised bargain. *Id*. at ¶¶ 61-65. Such damages are compensatory in nature, measured by calculating "the difference between the value of property as it was represented to be and its actual value at the time of its purchase." *Brewer v. Bros.*, 82 Ohio App. 3d 148, 154 (1992); *State v. Rose Chevrolet, Inc.*, CA91-12-214, 1993 WL 229392 at *2 (Ohio Ct. App. June 28, 1993) (citing *Molnar v. Beriswell*, 122 Ohio St. 348, 252 (1930)).

Plaintiffs' precise calculation of damages is not entirely clear. On the one hand, plaintiffs base their theory of damages on the expectation of receipt "of 4 suits each with a market value of $795 – a total value of $3,180 – which was the deal he was promised." *Amended Complaint*, ¶ 62 (emphasis in the original).  On the other hand, plaintiffs calculate their damages as

> the difference between what he was told he would pay for 4 suits (that is, the true regular price of one suit – where regular price has a required statutory definition) and what he was actually required to pay to receive the 4 suits (here $795, an inflated number unrelated to the true regular price of the suits).

9

*Id*. at ¶ 63 (emphasis in the original). The *Amended Complaint* does not specify the "true regular price" but defines that term only as "a fraction of $795." *Id*. at ¶ 60. Significantly, and as noted *supra*, the *Amended Complaint* does not allege that plaintiffs (or members of the putative class) did not receive four suits in exchange for payment of $795, nor does it allege that the four suits actually received were worth, collectively, less than $795 or were available elsewhere for less than that amount.

In contending that the *Amended Complaint* has alleged actual damages sufficient to sustain a class action under the OCSPA, plaintiffs rely primarily on two cases: *Rose Chevrolet, Inc.*, 1993 WL 229392, and *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). In *Rose Chevrolet*, a car dealership falsely advertised that used rental cars were "factory official vehicles"[4] and sold those cars to consumers at higher prices. *Rose Chevrolet*, 1993 WL 229392, *2. The court, first noting that benefit of the bargain damages are generally awarded in cases involving breach of contract or common law fraud and not in cases alleging violations of the OCSPA, nevertheless awarded each class member $500, that amount representing the difference in value between the used rental cars purchased by most class members and a factory official car. *Id.*

*Rose Chevrolet* is inapposite. In characterizing the cars at issue in that case as "factory official vehicles," the defendant in *Rose Chevrolet* made an affirmative misrepresentation about the nature and

---

[4] A "factory official vehicle" is expressly defined in Ohio Admin. Code § 109:4-3-16 as a current or previous model year car operated by a representative of the vehicle's manufacturer or distributor.

10

quality of the product sold.  Here, on the other hand, defendant's allegedly false statements relate to its use of the word "free" and to its pricing practices. Those statements simply do not address the nature of the suits sold.

Plaintiff's theory of damages improperly conflates pricing strategy and the intrinsic nature or value of the goods sold. Plaintiffs justify their calculation by pointing to defendant's own sales materials, in which defendant offers additional suits "of 'equal or lesser <u>value</u>' than the suit that is purchased." *Amended Complaint*, ¶ 26 (emphasis in original). However, the OCSPA violation alleged by plaintiffs and the rule upon which plaintiffs rely, Ohio Admin. Code § 109:4-3-04(H), relate not to a misrepresentation of the nature or value of the goods sold[5] but to a claimed misuse of the term "free." In any event, defendant's use of the word "value" in this context clearly relates to price, and not to the intrinsic value of the suits purchased.

In *Hinojos*, upon which plaintiffs also rely, the United States Court of Appeals for the Ninth Circuit applied California law to hold that a consumer suffers economic injury when he "purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation . . . ."  *Id.*, 718 F.3d at 1107.

---

[5] Indeed, in dismissing the original *Complaint*, this Court held, "Although the price charged in a consumer transaction may be generally representative of the quality of the items sold, the price charged does not, by itself, constitute a representation that a product is of a *particular* quality. Accordingly, the *Complaint* fails to state a colorable claim for relief under O.R.C. § 1345.02(B)(2)." *Opinion and Order*, ECF 30, PageID# 447 (emphasis in the original).

11

> [T]o . . . consumers, a product's "regular" or "original" price matters;  it provides important information about the product's worth and the prestige that ownership of that product conveys. . . . Misinformation about a product's "normal" price is, therefore, significant to many consumers in the same way as a false product label would be. . . . In fact, the deceived bargain hunter suffers a more obvious economic injury . . . because the bargain hunter's expectations about the product he just purchased is precisely  that it has a higher perceived value and therefore has a  higher resale value.

*Id.* at 1106-07 (internal citations omitted). The Ninth Circuit did not calculate the precise economic injury suffered by the bargain hunting consumer; that court merely held that such a consumer has standing to sue under California law.[6]

Defendant contends that neither the individual plaintiffs nor members of the putative class suffered actual damages for any alleged violation of Ohio Admin. Code § 109:4-3-04 because they did not incur pecuniary or out-of-pocket loss. Defendant urges this Court to reject the reasoning of *Hinojos* as improperly conflating the concepts of causation and damages.  *Defendant's Reply*, PageID# 858. Noting the definition of "regular price" established in O.A.C. § 109:4-3-04(H),[7] defendant argues that – even assuming a violation of Ohio Admin. Code 109:4-3-04 – the regular price for four suits must be calculated as

---

[6] In considering defendant's earlier motion to dismiss, this Court found the original *Complaint* to be insufficient even under *Hinojos* because, *inter alia*, the *Complaint* did not allege reliance by the members of the putative class on the alleged misrepresentation of the "regular price" of the suit. *Opinion and Order*, ECF 30, PageID# 460-61. The *Amended Complaint* alleges that plaintiffs and the members of the proposed class relied on defendant's misrepresentations. *Id*. at ¶ 37. *See also id*. at ¶¶ 19, 87. However, the class definition proposed by plaintiffs, *id.* at ¶ 91, does not include a reliance component.

[7] "[T]he supplier's regular price for goods to be purchased by consumers in order to avail themselves of the 'free' goods will, by lapse of time, become the regular price for the 'free' goods or services <u>together with</u> the other goods or services required to be purchased" (emphasis added).

12

$795, which is the precise amount allegedly paid for the four suits received by the purchaser. *Defendant's Motion,* PageID# 687.

> Each Plaintiff selected the four suits he wanted, took them to the register, and knowingly and voluntarily chose to exchange payment for delivery of the suits. Each Plaintiff received exactly what he believed he was purchasing at the price he expected to pay. Plaintiffs suffered no actual damages or injury, and thus, any award would be an improper windfall.

*Id.* at PageID# 682-83.

This Court agrees with this analysis and declines to import the Ninth Circuit's theory of loss of subjective expectancy into the OCSPA. It must be remembered that the *Amended Complaint* does not allege that the suits purchased by plaintiffs were not worth, collectively, the amount that plaintiffs paid or that similar suits could have been purchased elsewhere for less. Under these circumstances, and even assuming that plaintiffs are able without unreasonable speculation to assign a dollar amount to their claimed actual damages, recognition of plaintiffs' claim would leave each plaintiff with four suits that are worth, collectively, no less than the amount paid for them, plus some additional amount in claimed damages. It is clear to this Court that the *Amended Complaint* fails to allege actual injury or damage as a result of the alleged OCSPA violation.

The United States Court of Appeals for the Seventh Circuit, applying Illinois law to defendant's alleged pricing strategy and sales practices, has reached a similar conclusion. *Camasta v. Jos. A. Bank Clothiers, Inc.*, -- F.3d --, 2014 WL 3765935 (7th Cir. Aug. 1, 2014). The Seventh Circuit summarized plaintiff's claim of actual

13

damages under the Illinois Consumer Fraud and Deceptive Business Practices Act, which requires a showing of "actual damage" to a private plaintiff:

> Camasta did not claim that he was denied the terms or pricing he saw advertised or that he did not receive the shirts he selected.  He does not claim that there was anything about the shirts themselves that made them defective or caused him to change his opinion about their value.  Camasta simply argues that his expectations for the discount he received were unrealized when he learned that the sale was not a temporary price reduction, but rather the normal retail price of JAB's merchandise.

*Id*. at *1. Commenting that the plaintiff in that case had "failed to provide any evidence that he paid more than the actual value of the merchandise he received," *id*. at *6, the Seventh Circuit affirmed the dismissal of the action for failure to state a claim upon which relief can be granted.

    Plaintiffs argue that to construe a damages theory of subjective expectancy as insufficient under the OCSPA is to "make[] a nullity of OAC §109:4-3-04."  *Plaintiff's Response*, PageID# 815.  To the contrary, individual consumers able to establish a violation of the rule may recover statutory damages even in the absence of actual damages.  O.R.C. § 1345.09(B). Moreover, plaintiffs who are able to allege and show actual damages in the form of, for example, payment for goods falsely advertised as "free" but available elsewhere for a lower price would be able to pursue even claims on behalf of a class.

    The Court also rejects plaintiffs' contention that this conclusion is inconsistent with this Court's language in *Delahunt v. Cytodyne Technologies*, 241 F. Supp. 2d 827 (S.D. Ohio 2003). In

14

rejecting the notion that the plaintiff in that case had failed to allege a cognizable injury, the Court stated:

> Unlike a fraud claim, where a plaintiff must allege harm above and beyond the misrepresentation and reliance thereon, a cause of action accrues under the Consumer Sales Practices Act as soon as the allegedly unfair or deceptive transaction occurs.

*Id.* at 835. However, the plaintiff in *Delahunt* asserted, not misuse of the word "free" in violation of Ohio Admin. Code § 109:4-3-04, but claims based upon the alleged misrepresentation of the nature and quality of the product purchased. In particular, plaintiff sought a refund on behalf of herself and a class of plaintiffs, alleging "that the Defendants engaged in unfair or deceptive acts or practices by representing that the product was of a particular grade, standard, or quality when it was not . . . ." *Id*. at 836-37. As a result, plaintiff argued, "every class member suffered harm because they paid for a product that differed from what it was represented to be, and thereby incurred a financial injury equal to the amount they paid for the product." *Id.* at 833. The facts alleged by plaintiffs in *Delahunt* are more closely aligned with those presented in *Rose Chevrolet*, in which the supplier made an affirmative misrepresentation about the nature and quality of the product sold.  For the reasons stated *supra*, defendant's alleged pricing strategy and sales practices cannot be so construed and the Court concludes that *Delahunt* does not require a different conclusion.

For all these reasons, the Court concludes that the *Amended Complaint* fails to sufficiently allege actual damages as required for a class action under O.R.C. § 1345.09(B).

15

**2. The Breach of Contract Claim**

Under Ohio law, a pleading asserting a breach of contract claim must plead: 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) resulting damages. *Pavlovich v. National City Bank,* 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.,* 156 Ohio App.3d 575, 807 N.E.2d 953, 957 (Ohio Ct. App.2004)). The *Amended Complaint* fails to adequately plead these elements.

The *Amended Complaint* fails to plead the existence of a contract containing the advertised terms. Plaintiffs allege that defendant's advertisements "constituted offers, the acceptance of which completed a binding contract." *Amended Complaint*, at ¶ 69. As a general rule, however, proposals to the public in advertisements and circulars are not offers that can be unilaterally accepted and made binding. *See* 1 E. Farnsworth, Contracts, § 310, p. 260-61, and n.30 (3d ed. 2004)(citing *Zaugg v. Toledo Fiberglass Credit Union*, 1988 WL 114376 at * 1-2 (Ohio Ct. App. Oct. 28, 1988)(brochure advertising loan insurance was not an offer); *Ehrlich v. Willis Music Co.*, 93 Ohio App. 246, 247 (Ohio Ct. App. 1952)(newspaper advertisement for a sale price on televisions was not an offer but an invitation to patronize the store); *Craft v. Elder & Johnston Co.*, 38 N.E. 2d 416, 417-18 (Ohio Ct. App. 1941) (newspaper advertisement of a sale price for sewing machines did not create contractual obligations). The purpose of this rule is to protect merchants – whose supplies are limited – from excessive demands or "acceptances." 1 Farnsworth, §3.10 at 260.

It is true that the general rule does not apply when an advertisement "'is clear, definite, and explicit, and leaves nothing open for negotiation . . . .'" *Stern v. Cleveland Browns Football Club,* 1996 WL 761163, *4 (Ohio Ct. App. Dec. 20, 1996)(Football season ticket renewal solicitation constituted contractual offer because it was "specific in its terms including price, quantity of tickets, and the time [the purchaser] had to submit his payment. . . . Furthermore, the renewal package mailed to [the purchaser] was not a general advertisement to the public . . . ."). Other examples are those advertisements that contain qualifiers that limit the sale or identify targeted consumers, *e.g.,* "while supplies last" or "the first customer of the day." 1 Farnsworth, §3.10 at 261. *See also Zaugg*, 1988 WL 114376, *2 ("An advertisement can rise to the level of an offer if special circumstances exist, such as, where it '. . . involves a published offer of a reward for the furnishing of certain information, the return of particular property, or the doing of a certain act . . . .' or where the '. . . parties have progressed to a consummated deal.'")(quoting *Craft*, 38 N.E. at 418). Plaintiffs do not, however, allege that defendants used such language in their advertisements nor do the advertisements proffered by plaintiffs, *Exhibit 1* attached to the *Amended Complaint*, include such qualifying language.[8] Moreover, the

---

[8]Six advertisements attached to the *Amended Complaint* indicate that advertised sales were not available to the general public, but were instead intended for persons possessing an "invitation" or who had joined a discount club. *Exhibit 1* attached to *Amended Complaint*, PAGEID # 490, 492, 493, 507, 530. Significantly, these advertisements do not refer to the sales about which the named plaintiffs complain (*i.e.,* "buy one suit at regular price, and receive [*x*] suits for free"). Moreover, The *Amended Complaint* contains no allegations about the distribution of these advertisements or why and how they create an exception to the general rule that advertisements are not offers.

17

pricing practice complained of by plaintiffs referred only to the "regular" price of the product purchased, without specifying that price, and to additional products of "equal or lesser value," without specifying those "free" products.

Under these circumstances, the Court concludes that the alleged advertisements about which plaintiffs complain did not constitute contractual offers that ripened into contracts upon plaintiffs' tender of money.  Rather, it was each plaintiff's offer to pay for one suit at the price specified by defendant at the time of purchase, with the expectation that he would receive additional suits, that became the basis of the parties' contract when defendant accepted that offer.

Plaintiffs allege that they paid $795 in exchange for one suit and the promise of three additional suits. *Amended Complaint*, at ¶¶ 13-15.  The *Amended Complaint* therefore sufficiently alleges the existence of a contract for the sale of goods.  However, plaintiffs do not allege that they did not receive four suits for the agreed upon price of $795.  Accordingly, the *Amended Complaint* fails to adequately plead a claim for breach of contract.

In sum, *Defendant's Motion*, ECF 33, is **GRANTED in part** and **DENIED in part**.  The class claims and the breach of contract claim asserted in the *Amended Complaint* are **DISMISSED**. The Court declines, at this juncture, to dismiss the claims of the individual plaintiffs for statutory damages under O.R.C. § 1345.09(B).  Because the Court entertains reservations as to its jurisdiction over the remaining

claims, however, the Court will expect the parties to address this issue at a conference to be scheduled forthwith.


August 19, 2014
Date                                          *s/Norah McCann King*
                                          Norah M<sup>c</sup>Cann King
                                        United States Magistrate Judge