**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MATTHEW B. JOHNSON, *et al.*,

      Plaintiffs,

    vs.                       Civil Action 2:13-cv-756
                                    Magistrate Judge King

JOS. A. BANK CLOTHIERS, INC.,

      Defendant.

<u>OPINION AND ORDER</u>

      Plaintiffs instituted this action on behalf of themselves and a putative class of Ohio residents, alleging multiple violations of the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 *et seq.*, and rules promulgated thereunder, in connection with the marketing practices of defendant Jos. A. Bank Clothiers, Inc., based on allegedly false advertised regular prices. *Amended Complaint*, ECF 32. On August 19, 2014, the Court granted defendant's motion to dismiss the class allegations, reasoning that plaintiffs had failed to allege actual damages, a prerequisite to a class action under the OCSPA. *Opinion and Order*, ECF 40.

      This matter is now before the Court for consideration of *Defendant's Motion for a Protective Order* ("*Defendant's Motion*"), ECF 47. Defendant seeks "an Order striking the First Set of Interrogatories and Requests for Production served by Plaintiffs" or, in the alternative, a protective order "to protect Jos. A. Bank from the annoyance and undue burden that Plaintiffs' discovery requests impose." *Id.* at *PAGEID* 930-32. Plaintiffs filed a response to *Defendant's Motion* and their own motion to compel response to the

contested interrogatories and document requests. *Motion to Compel*, ECF 48. Defendant filed a response to plaintiffs' *Motion to Compel*, *Defendant's Response in Opposition to Plaintiffs' Motion to Compel* ("*Defendant's Response*"), ECF 49, and plaintiff filed a reply, *Plaintiffs' Reply Brief in Support of their Motion to Compel*, ECF 50. This matter is now ripe for consideration.

## I.   Background

The Court has previously set forth the allegations in the *Amended Complaint*:

> Defendant Jos A. Bank Clothiers, Inc., is a Delaware corporation with its principal place of business in Maryland. *Amended Complaint*, ¶ 10. Defendant operates a national chain of retail clothing stores and has approximately twenty-five stores throughout Ohio, including four stores in Franklin County, Ohio. *Id*. at ¶ 11. Defendant frequently advertises sales via "television commercials, targeted mailings, Facebook, email, targeted telephone campaigns and in-store advertising" in which the purchaser of one suit at the "regular" price receives a specified number of additional suits for free. *See id*. at ¶¶ 20-21, 41, 46.
>
> The named plaintiffs, Matthew Johnson and Charles Patterson, are Ohio residents. *Id*. at ¶ 8. In 2013, each purchased a suit from defendant at a store operated by defendant in Ohio. *Id.* at ¶¶ 13-14. Plaintiffs purchased their suits at "the purported 'regular price' of $795" and, based on the advertised sale at the time, each was promised "three 'free' suits." *Id*. at ¶¶ 13-15. Plaintiffs do not allege that they did not receive four suits in exchange for their payment of $795, nor do they allege that the four suits actually received by them were worth, collectively, less than $795 or that they could have obtained four suits of similar quality elsewhere for less than $795. Plaintiffs do allege, however, that the "regular price" of each purchased suit was "vastly inflated above the true regular market price regularly paid by consumers for Jos. A. Bank suits." *Id*. at ¶ 16. Plaintiffs further allege that the "regular price" of the suits "was grossly inflated by Jos. A. Bank in order to pass the costs of the 'free suits' on to the Plaintiffs." *Id*. at ¶ 17.
>
> According to plaintiffs, defendant's suits are "almost

2

never" sold at the "regular price;" plaintiffs believe that fewer than one percent of defendant's suits sold in Ohio are sold at the "regular price." *Id*. at ¶¶ 23-25, 27. Because defendant's suits "are on 'sale' almost 100% of the time," defendant's advertised "regular prices" "do not reflect the true price regularly paid by consumers for their suits." *Id*. at ¶ 22-23; *see also id*. at ¶ 38 ("[A]s soon as one sale ends, another substantially similar sale begins."). In addition, plaintiffs allege that, because Jos. A. Bank suits are almost never sold at the regular price, "the purported 'regular price' is by definition not 'regular,' and is, instead, illusory." *Id*. at ¶ 25; *see also id*. at ¶ 36 ("the 'sales price' of Jos. A. Bank's suits. . . has become the true 'regular price' due to the fact that the sales are never ending.").

*Opinion and Order*, ECF 40, pp. 2-3.

## II.  Standard

Plaintiff's motion to compel response to interrogatories and requests for production of documents is governed by Rule 37 of the Federal Rules of Civil Procedure. Rule 37 authorizes a motion to compel discovery when a party fails to provide a proper response to an interrogatory under Rule 33 or a proper response to a request for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio Sept. 25, 2006) (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999)).

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted

under Rule 26(b) is broader than that permitted at trial.  The test is
whether the line of interrogation is reasonably calculated to lead to
the discovery of admissible evidence." *Mellon v. Cooper-Jarrett,
Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970).  However, "district courts
have discretion to limit the scope of discovery where the information
sought is overly broad or would prove unduly burdensome to produce."
*Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305
(6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).  *See also Lewis*,
135 F.3d at 402 (determining the proper scope of discovery falls
within the broad discretion of the trial court).  In determining the
proper scope of discovery, a district court balances a party's "right
to discovery with the need to prevent 'fishing expeditions.'" *Conti
v. Am. Axle & Mfg. Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009)
(quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Defendant's motion for a protective order is governed by Rule
26(c), which provides that "[t]he court may, for good cause, issue an
order to protect a party or person from annoyance, embarrassment,
oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).
"The burden of establishing good cause for a protective order rests
with the movant." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)
(citing *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th
Cir. 1973)).  "To show good cause, a movant for a protective order
must articulate specific facts showing 'clearly defined and serious
injury' resulting from the discovery sought and cannot rely on mere
conclusory statements." *Id.* (quoting *Avirgan v. Hull*, 118 F.R.D. 252,
254 (D.D.C. 1987) (internal quotation marks omitted)).  Finally, the

4

grant or denial of a protective order falls within "'the broad discretion of the district court in managing the case.'" *Conti*, 326 F. App'x at 903-04 (quoting *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989)).

A party moving to compel discovery must also certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. A party seeking a protective order must certify that it "has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). These prerequisites have been met here.

## III. Discussion

The motions currently before the Court are reciprocal; plaintiffs' *Motion to Compel* seeks to compel response to the interrogatories and requests for production from which *Defendant's Motion* seeks protection. Defendant argues in its motion that plaintiffs' discovery requests "amount to discovery on a class-wide basis, are far too overbroad for the individual claims of the two Plaintiffs at issue, impose a tremendous burden on Jos. A. Bank, and serve only as harassment." *Defendant's Motion*, *PAGEID* 931. According to defendant, plaintiffs' discovery requests seek "thousands upon thousands of transactions involving people all over the state of Ohio over the course of two years." *Id*. at *PAGEID* 938. Defendant characterizes plaintiffs' discovery requests as "grossly

disproportional to the $400.00 at issue in this case" because they "seek nothing short of an audit of Jos. A. Bank's business in the entire state of Ohio." *Id*. at *PAGEID* 943. Defendant presents the "more salient points" of its objections to plaintiffs' discovery requests in a table that spans four pages. *Id*. at *PAGEID* 940-43.

Plaintiffs argue in their motion that defendant's objections to the discovery requests "effectively constituted a complete refusal to engage in the discovery process." *Motion to Compel*, p. 1. Plaintiffs characterize their discovery requests as relevant and "necessary to prove what the true 'regular price,' as that term is statutorily defined, of a JAB suit was over the relevant statutory period – a strict necessity to prove Plaintiffs' case." *Id*. Plaintiffs dispute defendant's contention that only $400 is at issue in this case and they argue that the discovery sought is relevant to their claims for declaratory and injunctive relief. *Id*. at p. 2. According to plaintiffs, "all sales to the Ohio public by JAB" over the previous two years are relevant and necessary to determine the price at which defendant's suits "are openly and actively sold . . . to the public on a continuing basis for a substantial period of time." *Id*. at p. 3.

*Defendant's Response* argues that plaintiffs "lack[] Article III standing to seek injunctive relief" because they do "not claim [to be] under a threat of suffering future injury." *Defendant's Response*, pp. 2-3. Defendant should not be required to respond to plaintiffs' discovery requests, defendant argues, because "the cost of responding outweighs the need for the discovery sought" and "responding to discovery is not necessary to resolution of the action." *Id*.

The *Amended Complaint* seeks declaratory, injunctive, and monetary

6

relief for alleged violations of the OCSPA.  *Amended Complaint*, p. 17.
Defendant challenges plaintiffs' standing to pursue injunctive relief
and argues that a protective order is necessary because the discovery
sought is disproportionate to the $400 statutory maximum award
available to plaintiffs.  Defendant's arguments are not well taken.

The OCSPA prohibits a supplier from committing an unfair or
deceptive act or practice in connection with a consumer transaction.
O.R.C. § 1345.02(A).  The OCSPA also authorizes the Ohio Attorney
General to promulgate "substantive rules defining . . . acts or
practices that violate" the OCSPA.  O.R.C. § 1345.05(B)(2).  Where a
consumer establishes a deceptive act by a supplier in violation of
such a rule,

> the consumer may rescind the transaction or recover, but
> not in a class action, three times the amount of the
> consumer's actual economic damages or two hundred dollars,
> whichever is greater, plus an amount not exceeding five
> thousand dollars in noneconomic damages or recover damages
> or other appropriate relief in a class action under Civil
> Rule 23, as amended.

O.R.C. § 1345.09(B).

The *Amended Complaint* asserts a claim under a rule promulgated
pursuant to the OCSPA, O.A.C. § 109:4-3-04, which regulates suppliers'
use of the word "free" in advertisements.  That rule provides, in
pertinent part, as follows:

> It shall be a deceptive act or practice in connection with
> a consumer transaction for a supplier to use the word
> "free" or other words of similar import or meaning, except
> in conformity with this rule.  It is the express intent of
> this rule to prohibit the practice of advertising or
> offering goods or services as "free" when in fact the cost
> of the "free" offer is passed on to the consumer by raising
> the regular (base) price of the goods or services that must
> be purchased in connection with the "free" offer.  In the
> absence of such a base price a "free" offer is in reality a

single price for the combination of goods or services offered, and the fiction that any portion of the offer is "free" is inherently deceptive.

O.A.C. § 109:4-3-04(A).  Where, as is alleged here, there is

a consumer transaction in which goods or services are offered as "free" upon the purchase of other goods or services the supplier must insure:

(1) That the unit regular price charged for the other goods or services is not increased, or if there is no unit regular price, the unit price charged for the other goods or services is continued for a reasonable period of time[.]

O.A.C. § 109:4-3-04(D)(1).  In addition,

[o]nly the supplier's regular price for the goods or services to be purchased may be used as the basis for a "free" offer.  It is, therefore, a deceptive act or practice for a supplier to offer "free" goods or services based on a price which exceeds the supplier's regular price for other goods or services required to be purchased.

O.A.C. § 109:4-3-04(E).  "Regular price" is defined as

the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time.  A price is not a regular price if:

(a) It is not the supplier's actual selling price;

(b) It is a price which has not been used in the recent past; or

(c) It is a price which has been used only for a short period of time.

O.A.C. § 109:4-3-04(F)(1).  Moreover,

[c]ontinuous or repeated "free" offers are deceptive acts or practices since the supplier's regular price for goods to be purchased by consumers in order to avail themselves of the "free" goods will, by lapse of time, become the regular price for the "free" goods or services together with the other goods or services required to be purchased. Under such circumstances, therefore, an offer of "free" goods or services is merely illusory and deceptive.

8

O.A.C. § 109:4-3-04(H).

The *Amended Complaint* specifically alleges that defendant advertises sales of suits in which the purchaser of one suit at the "regular" price of $795 receives three additional suits for free. *See Amended Complaint*, ¶¶ 20-21, 41, 46. Plaintiffs also allege, however, that defendant's suits are "almost never" sold at the "regular price." *Id*. at ¶¶ 23-25, 27. Thus, plaintiffs contend, defendant's advertised "regular prices" "do not reflect the true price regularly paid by consumers for their suits." *Id*. at ¶ 22. Because suits are almost never sold at the "purported 'regular price,'" that price is illusory and it is the "sale price" that is the true regular price. *Id*. at ¶¶ 25, 36.

The *Amended Complaint* seeks monetary relief, a declaration that "Jos. A. Bank's sales and marketing practices [are] wrongful, unfair, unconscionable and in violation of Ohio law," and an injunction prohibiting "Jos. A. Bank from further use of inflated 'regular price' descriptions and order compliance with R.C. § 1345.02 and the associated Administrative Rules." *Amended Complaint*, p. 17. Defendant argues that "this case could be resolved for $400," *Defendant's Response*, p. 1, because plaintiffs' monetary damages are limited to $400 under O.R.C. § 1345.09(B). However, O.R.C. § 1345.09(D) provides that "[a]ny consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates [the OCSPA]." The remedy of injunctive relief is statutory and does not require, as defendant argues, *see Defendant's Response*, p. 4 (arguing that Illinois and New Jersey law

9

requires the plaintiff to prove that he will likely be harmed by the defendant in the future), that plaintiffs be under a threat of future injury. *See Midland Funding LLC v. Brent*, No. 3:08-CV-1434, 2009 WL 3086560, at *2 (N.D. Ohio Sept. 23, 2009). Accordingly, if plaintiffs prove the OCSPA violation alleged by them, the Court must then determine whether injunctive relief is an appropriate remedy. *See Cartwright v. Beverly Hills Floors, Inc.*, No. 11MA109, 2013 WL 2423185, at *7-8 (Ohio Ct. App. May 30, 2013). In that regard, courts routinely issue injunctions to enjoin deceptive conduct that violates the OCSPA:

> Ohio Rev.Code Ann. § 1345.09(D) provides that "[a]ny consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates [the OCSPA]." The Ohio courts have interpreted the statute as follows: "Since the remedy of injunctive relief is statutory, it may be granted upon a showing the [O]CSPA has been violated, without regard to equitable principles that must ordinarily be demonstrated when a plaintiff seeks an injunction, such as irreparable injury or the absence of an adequate remedy at law." See Oh. Consumer L. § 2:132 (2009), and cases cited therein. In cases brought by consumers under the OCSPA, "[Ohio] courts have issued broad injunctions, usually enjoining the suppliers from engaging in the acts or practices the court has determined violate the [O]CSPA." *Id.*

*Midland Funding LLC*, 2009 WL 3086560 at *2. Defendant's argument that this action is worth $400 and that plaintiffs should not be permitted to pursue injunctive relief is therefore without merit.

Defendant next argues that plaintiffs' discovery requests are overbroad because they seek records "for thousands upon thousands of transactions involving people all over the state of Ohio over the course of two years." *Defendant's Motion*, *PAGEID* 938. Defendant's conclusory statement is not sufficient to justify the protective order

10

sought; defendant has simply failed to articulate specific facts showing that a clearly defined and serious injury will result from the requested discovery.  *See Nix*, 11 F. App'x at 500.

Defendant's objections were based primarily on the theory that the discovery sought is disproportionate to the monetary relief available to plaintiffs.  As discussed *supra*, however, this argument fails to take into consideration plaintiffs' claim for injunctive relief under O.R.C. § 1345.09(D).  Defendant also argues that the discovery sought amounts to class-wide discovery and is unjustifiably overbroad in connection with the individual claims of the two named plaintiffs.  *Defendant's Motion*, *PAGEID* 931.  Defendant specifically argues that the discovery requests are overbroad because they seek, *inter alia*, information and documents relating to sales, advertising, and pricing for the line of suits purchased by plaintiffs for all of defendant's stores in Ohio over a two year time period.

As discussed *supra*, plaintiffs allege that defendant violated the OCSPA by manipulating the "regular price" of suits that are sold in connection with an offer of free suits.  To prove their claim, plaintiffs will have to establish the "regular price" of the suits that they purchased from defendant.  Plaintiffs argue that their discovery requests are relevant to this determination.  Plaintiffs have not, however, specifically addressed the individual objections raised by defendant to each interrogatory and request for production, nor have they attempted to establish that every request seeks relevant information.  Instead, plaintiffs argue that "all sales to the Ohio public" are relevant to determine the "price at which the goods or services are openly and actively sold by a supplier to the public,"

and that two years of sales data is "a substantial period of time."
*Motion to Compel*, p. 3. Defendant disagrees that sales from the
entire state are relevant and argues that providing two years of data
would be unduly burdensome. *Defendant's Motion*, *PAGEID* 940-43.
Neither plaintiffs nor defendant has offered any support for their
positions.

The term "regular price" is defined broadly, and plaintiffs are
entitled to discovery to establish the "regular price" of defendant's
suits. It is not entirely clear, however, what portions of
plaintiffs' discovery requests are relevant to this determination
because plaintiffs have failed to address relevancy in the context of
the specific discovery requests. It is clear that, for the relevant
line of suits, plaintiffs will be entitled to discover, for example,
information related to the number of suits sold and the sale prices,
both for suits that were on sale and for suits sold at regular price,
as well as information related to sales promotions, including the
dates, locations, and terms of the promotions. It is not clear,
however, what constitutes "a substantial period of time" or that
information from all of defendant's stores is relevant to the
determination of defendant's "regular price." If defendant uses
uniform pricing and promotional strategies throughout Ohio, then all
sales in Ohio may very well be relevant to the issues presented in
this action. On the other hand, if defendant's pricing and promotions
vary from store to store or in different regions of the state, then
the "regular price" of a suit will differ in differing locations. It
is also unclear how information related to defendant's planning of

12

promotions, defendant's strategy behind its promotions, defendant's cost of goods sold, and defendant's calculation of its pricing is relevant to a determination of the "regular price" of defendant's suits.

Wherefore, based on the foregoing, *Defendant's Motion*, ECF 47, is **DENIED**. Because plaintiffs failed to address defendant's objections and relevancy in the context of the specific discovery requests at issue, plaintiff's *Motion to Compel*, ECF 48, is **DENIED without prejudice to renewal**.

Considering the foregoing, the posture of the case, and plaintiff's demonstrated willingness to discuss modifications to their discovery requests, the Court **DIRECTS** the parties to discuss plaintiffs' discovery requests with a view toward narrowing the requests, consistent with the foregoing.

March 30, 2015                        *s/Norah McCann King*_____
                                        Norah M<sup>c</sup>Cann King
                                  United States Magistrate Judge

13